UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLDCASTE PRECAST, INC., | CASE NO. C10-322 MJP |
| Plaintiff, | ORDER ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND |
| v. | |
| GRANITE PRECASTING & CONCRETE, INC., | |
| Defendant. | |

This matter comes before the Court on three motions: (1) Defendant's motion for summary judgment on Plaintiff's claims (Dkt. No. 42.); (2) Plaintiff's motion for leave to amend (Dkt. No. 47); and (3) Plaintiff's motion for summary judgment on Defendant's counterclaim (Dkt. No. 49.)   Having reviewed the motions, the responses (Dkt. Nos. 52, 54, 62), the replies (Dkt. Nos. 63, 65, 67), Plaintiff's surreply (Dkt. No.70), and all related papers the Court: (1) DENIES in part and GRANTS in part Defendant's motion; (2) GRANTS Plaintiff's motion to amend; and (3) GRANTS Plaintiff's motion for summary judgment.

1                                    **Background**

2     A.      Facts Relevant to Summary Judgment Motions

3             Plaintiff and Defendant manufacture concrete precast vaults and other concrete offerings.

4     Plaintiff began its operations in the 1960s and has "established itself as a leader in the market for

5     precast concrete vaults."  (Venn Decl. ¶ 8; Schack Decl. ¶¶ 5, 11.)   Defendant is a competitor

6     with Plaintiff, and it designs and manufactures precast products in Bellingham, Washington.

7     (Salisbury Decl. ¶¶ 3, 4-5.)  Plaintiff filed suit against Defendant, alleging that Defendant has

8     copied and used various technical drawings Plaintiff created of its precast offerings.  Plaintiff

9     originally pursued a Copyright Act claim, a Lanham Act claim, a breach of implied convenant

10    claim, and several other state law claims.  The Court dismissed all of the state law claims except

11    the breach of implied covenant claim.  (Dkt. No. 23.)

12            In 2006, Plaintiff became aware that Defendant was using drawings that were similar to

13    certain technical drawings Plaintiff had created.  (Venn Dep. at 50, 55-56.)  Plaintiff notified

14    Defendant of the purported copying, and after the two parties met Defendant agreed to change 12

15    sets of its drawings.  (Venn Dep. Exs. 4, 5; Salisbury Decl. at 5; Salisbury Dep. Exs. 4, 5.)  The

16    parties exchanged letters and a proposed settlement agreement.  (Id.)  Defendant never signed the

17    agreement, and Plaintiff did not pursue the matter.  (Am. Compl. ¶ 16; Venn Dep. at 88.)

18    Plaintiff's president, Gary Venn, monitored Defendant's website throughout 2007-2009, and

19    noted the continued use of only one product he believed to be infringing.  (Venn. Dep. at 86-88,

20    156.)  Except as to one drawing, Venn believed Defendant had complied with the parties'

21    unsigned agreement.  However, at "sometime during the spring or summer of 2007," Venn

22    claims that he learned that Defendant failed to change all of its drawings and product numbers.

23    (Venn Decl. ¶ 11.)

24

1       Nearly two years later, in 2009, Plaintiff learned that Defendant submitted a bid for a

2  project for Seattle City Light in Shoreline in which Defendant used drawings to that Plaintiff

3  believed infringed on its copyright.  (Venn Decl. ¶ 11.)  Plaintiff filed suit on February 24, 2010.

4  Defendant now moves for summary judgment as to Plaintiff's claims on the basis of the statute

5  of limitations, the statute of frauds, and on the merits of the Copyright and Lanham Act claims.

6  (Dkt. No. 42.)  After Defendant filed its motion for summary judgment, Plaintiff also filed a

7  motion for summary judgment, seeking dismissal of Defendant's counterclaim of copyright

8  misuse.  (Dkt. No. 49.)  Plaintiff argues that the counterclaim is only an affirmative defense, not

9  a counterclaim.

10  B.    <u>Facts Relevant to the Motion to Amend</u>

11       Six days after Defendant filed its motion for summary judgment, Plaintiff filed a motion

12  to amend its complaint.  (Dkt. No. 47.)  Plaintiff alleges that it found new evidence during

13  discovery necessitating certain limited amendments.

14       When Plaintiff filed its first amended complaint on April 22, 2010, it alleged that

15  Defendant downloaded drawings Plaintiff created in electronic format (either PDF or AutoCAD),

16  and used them to create its infringing drawings.  (Am. Compl. ¶ 18.)  Plaintiff's drawings are

17  subject of a registered copyright, TX-4-684-742.  During a deposition of Defendant's witnesses

18  in the week of September 13, 2010, Plaintiff claims it learned for the first time that Defendant

19  copied different drawings not downloaded from the website.  Instead, Plaintiff believes

20  Defendant copied much older vault drawings that Seattle City Light gave to Defendant that were

21  originally produced and published by Plaintiff's predecessor, Concrete Conduit Company

22  ("CCC").  (Dkt. No. 47 at 3-4.)

23

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 3

1    According to Plaintiffs, the copyright registrations for the drawings from CCC were

2    registered in 1970 under the Copyright Act of 1909, not the Copyright Act of 1976 (under which

3    the TX-4-684-742 registration was made).  Venn alleges that it took him four weeks of

4    inspecting his company's records to find the earliest publication of the drawings Seattle City

5    Light gave to Defendant.  (Venn Decl. ¶ 3 (Dkt. No. 48).)  It appears that in early October,

6    Plaintiff spent 3 weeks preparing the renewal registration and supplementing the registration of

7    copyright TX-4-684-742.  (Id. ¶ 4.)  Plaintiff made its submission to the U.S. Copyright Office

8    on November 22, 2010.  (Id.)  The Office granted the renewal and supplemental registrations on

9    December 9, 2010.  (Id. ¶ 5.)  Plaintiff filed for leave to amend on December 22, 2010, six days

10   after Defendant moved for summary judgment on all of Plaintiff's claims.  (Dkt. Nos. 42, 47.)

11   Of note, discovery ended on November 26, 2010, the dispositive motion deadline was December

12   27, 2010, and trial is currently set for April 25, 2010.  (Dkt. No. 18.)

13      Plaintiff's proposed second amended complaint changes the allegations as to how

14   Defendant obtained Plaintiff's drawings.  (Dkt. No. 47-1 at ¶ 18.)  It also changes the allegations

15   as to which U.S. Copyright registrations are at issue.  (Id. ¶ 9.)  The other allegations appear to

16   be unchanged.

17                          **Analysis**

18      The Court addresses the pending motions in the following order: (1) Defendant's motion

19   for summary judgment; (2) Plaintiff's motion for summary judgment; and (3) Plaintiff's motion

20   for leave to amend.

21   A.   Defendant's Motion for Summary Judgment

22      Summary judgment is proper when the moving party has shown an entitlement to

23   judgment as a matter of law and there is an absence of genuine issues of material fact.  Fed. R.

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 4

1  Civ. P. 56(c)(2). The underlying facts are viewed in the light most favorable to the party

2  opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

3  (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could

4  return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

5  (1986). The party moving for summary judgment has the burden to show initially the absence of

6  a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159

7  (1970). However, once the moving party has met its initial burden, the burden shifts to the

8  nonmoving party to establish the existence of an issue of fact regarding an element essential to

9  that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v.

10  Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely

11  on its pleadings, but instead must have evidence showing that there is a genuine issue for trial.

12  Id. at 324.

13         1.     Statute of Limitations as to Copyright Claim

14        As to only one drawing has Defendant successfully demonstrated that Plaintiff's

15  Copyright claim is time-barred.

16        "A cause of action for copyright infringement accrues when one has knowledge of a

17  violation or is chargeable with such knowledge." Roley v. New World Pictures, Ltd., 19 F.3d

18  479, 481 (9th Cir. 1994). "In copyright litigation, the statute of limitations issue that often arises

19  is that the plaintiff filed its copyright claim more than three years after it discovered or should

20  have discovered infringement." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 705-06

21  (9th Cir. 2004); 17 U.S.C. § 507(b). The Copyright Act "does not provide for a waiver of

22  infringing acts within the limitation period if earlier infringements were discovered and not sued

23  upon, nor does it provide for any reach back if an act of infringement occurs within the statutory

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 5

1   period." <u>Roley</u>, 19 F.3d at 481 (quotation omitted).  However, "[i]n a case of continuing

2   copyright infringements, an action may be brought for all acts that accrued within the three years

3   preceding the filing of the suit." <u>Id.</u>

4          There is a dispute of fact as to whether the majority of Plaintiff's Copyright claims are

5   barred by the statute of limitations.  Plaintiff learned in 2006 that Defendant had infringed on at

6   least 12 sets of drawings, but did not file suit.  (Radcliffe Decl. at 14-15.)  Instead, Plaintiff

7   obtained an oral promise from Defendant not to use the drawings any more, and assumed

8   Defendant ceased its conduct.  (Venn Dep. at 86-87.)  Plaintiff's president, Gary Venn, claims he

9   monitored Granite's website from 2007 through 2009 and saw only one drawing that failed to

10  change.  (Venn Dep. at 85, 88-89.)  This supports Plaintiff's contention that it could not have

11  found out about the infringing conduct through diligent research three years prior to filing of the

12  complaint, given that it appeared to have performed such research.  This is somewhat

13  confounded by Venn's testimony that he knew Defendant never changed the infringing drawing

14  of a three-sided bridge, but did not follow up on getting any agreement signed.  (<u>Id.</u> 87-88.)  Yet

15  Venn maintains that at some time during the spring or summer of 2007 (likely within the statute

16  of limitations), he discovered that Defendant had not changed its other drawings.  (Venn Decl. ¶

17  11 (Dkt. No. 56 at 3).)  Whether Plaintiff should have known earlier is an issue for the jury.

18         Given the record presented, the Court DENIES Defendant's motion on this issue.

19  However, the undisputed facts do show that Plaintiff is barred from pursuing any copyright claim

20  as to its three-sided bridge drawing.  It knew of the purported infringement of this drawing in

21  2006 through 2007 and failed to file suit in a timely manner. (Venn Dep. at 85, 88-89.)

22  Defendant's motion on this issue is GRANTED and the Copyright claim related thereto is

23  DISMISSED.

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 6

1          2.      Statute of Limitations as to the Lanham Act Claim

2          Plaintiff moves for dismissal of Plaintiff's Lanham Act claim on the theory it is time-

3   barred.  The claim is untimely only as to the three-sided bridge drawing.

4          The Lanham Act has no express statute of limitations.  The Court therefore looks to the

5   limitations of the closest analogous limitation from statue law.  The closest analogous cause of

6   action in state law is Washington's common law tort of trade name infringement.  See Jonathan

7   Neil & Assocs., Inc. v. JNA Seattle, Inc., No. C06-1455JLR, 2007 WL 788354, at *6 (W.D.

8   Wash. Mar. 14, 2007).  Such claims have a three year statute of limitations.  RCW 4.16.080(2).

9          To the extent that Plaintiff knew of the lack of change to the three-sided bridge drawing

10  on Granite's website, its Lanham Act claim is time-barred.  Plaintiff knew in 2006 that the

11  drawing did not change, yet it took no action until 2010.  Plaintiff's Lanham Act claim related to

12  this drawing is time-barred.  The Court GRANTS Defendant's motion on this claim and

13  DISMISSES the claim.  As to the other drawings, the Court DENIES the motion.  As explained

14  above, a genuine issue of material fact precludes summary judgment.

15         The record remains unclear as to whether the Lanham Act claim based on Defendant's

16  use of similar product numbers is time-barred.  Plaintiff alleges Defendant caused confusion in

17  the market in violation of 15 U.S.C. § 1117 by parroting its product numbering system.  Venn

18  was aware that as of December 22, 2006, Defendant had not changed at least part of its

19  numbering system.  (Salisbury Dep. Ex. 6.)  However, it is unclear from the record whether

20  Defendant changed the system for some period of time on its website that Venn monitored or

21  whether Plaintiff should have known that the numbering remained the same.  The questions

22  posed to and answered by Venn at his deposition are insufficiently clear a basis on which the

23  Court might grant summary judgment.  The Court DENIES the motion on this issue.

24

1     3.   <u>Statute of Frauds</u>

2     Defendant argues that Plaintiff's breach of implied covenant is barred by the statute of

3 frauds.  The Court agrees.

4     Washington law requires that any contract that "by its terms is not to be performed in one

5 year from the making thereof" must be in writing.  RCW 19.36.010.  "The general rule is that a

6 verbal agreement to put in writing a contract which will require more than a year to be performed

7 is within the statute of frauds and thus unenforceable."  <u>Klinke v. Famous Recipe Fried Chicken,</u>

8 <u>Inc.</u>, 24 Wn. App. 202, 205 (1979), <u>aff'd</u>, 94 Wn.2d 255 (1980).  However, "[a] contract

9 requiring continuing performance fails to specify the intended duration is terminable at will and

10 is therefore outside of the statute of frauds."  <u>Duncan v. Alaska USA Fed. Credit Union, Inc.</u>,

11 148 Wn. App. 52, 73 (2008).

12     The oral agreement between Defendant and Plaintiff in 2006 required Defendant to

13 change its drawings and to agree to "forever cease and desist from any actions or omissions that

14 infringe, violate or misappropriate" Plaintiff's intellectual property.  (Dep. Ex. 5.)  The

15 agreement thus required performance of the contract, i.e., forebearance, in perpetuity.  While

16 initial conformity with the agreement could have commenced in 2006, the agreement required

17 continuing performance well beyond one year.  <u>See</u> <u>Klinke</u>, 24 Wn. App. at 205.  Because the

18 agreement specified that it was to endure "forever," it is not an at-will agreement that is outside

19 the statute of frauds.  <u>See</u> <u>Duncan</u>, 148 Wn. App. at 73.  Having not been reduced to a signed,

20 written document, the agreement violated the statute of frauds.  Plaintiff's breach of implied

21 covenant claim arising out of the contract is thus barred.  The Court notes that Plaintiff made no

22 response to Defendant's argument on this issue, perhaps an admission it has merit. The Court

23

24
ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 8

1    DISMISSES Plaintiff's claim for breach of implied covenant and GRANTS Defendant's motion

2    on this claim.

3           4.      Scope of Protection

4           Defendant presents several attacks to whether the works in question are copyrightable.

5    None of the attacks has merit.

6           a.      Scope of Protection

7           The Court must first determine "the scope of copyright protection before works are

8    considered as a whole." Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir.

9    1994) (quotation omitted).  Plaintiff bears the burden to identify the source of the alleged

10   similarities.  Id.  "Copyright law only protects expression of ideas, not the ideas themselves."

11   Cavalier v. Random House, Inc., 297 F.3d 815, 823 (9th Cir. 2002).  "The copyright is limited to

12   those aspects of the work-termed 'expression'-that display the stamp of the author's originality."

13   Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 547 (1985). "[S]imilarities

14   derived from the use of common ideas cannot be protected; otherwise, the first to come up with

15   an idea will corner the market." Apple, 35 F.3d at 1443.  For example, in Apple, the Ninth

16   Circuit held that Apple could not copyright a graphical user interface (i.e., the desktop) because

17   it was merely an idea, not an expression of the idea.

18          Plaintiff has properly identified the source of the similarities in the drawings as being

19   based on the expression of an idea, not the idea itself.  Plaintiff claims that Defendant has copied

20   its drawings of certain utility vaults from its catalog.  The drawings are technical drawings of

21   specific objects Plaintiff manufactures, and technical drawings are expressly included as works

22   covered by the Act.  17 U.S.C. §§ 101, 102(a)(5).  They are expressions of an idea: a utility

23   vault, for example.  Plaintiff is not claiming that it has a copyright for all precast utility vaults, as

24

1  Apple did with regard to the concept of a computer desktop metaphor.  The claim is made only

2  as to technical drawings, which are particular expressions of various ideas of precast items.

3       Defendant confuses the works Plaintiff claims are copyrighted in order to attack the

4  application of the Copyright Act.  Defendant argues that Plaintiff's technical drawings cannot be

5  copyrighted because they all relate to "unprotectable similarities in ideas, not in expression."

6  (Dkt. No. 42 at 13 (emphasis in original).)  Unlike the plaintiff in Apple, Plaintiff here is not

7  seeking copyright protection for a concept, such as a concrete vault or a desktop metaphor.

8  Rather, Plaintiff seeks protection of a specific drawing that contains details about size, placement

9  and location of various features of the vault it may later create.  Defendant has not shown that

10  Plaintiff is seeking protection that is improper under the Act.

11      Defendant also argues that Plaintiff's drawings are not copyrightable because they have

12  an intrinsic utilitarian function and are therefore unprotectable "useful articles."  This is

13  incorrect.  The Copyright Act defines a "useful article" as "an article having an intrinsic

14  utilitarian function that is not merely to portray the appearance of the article or to convey

15  information."  A technical drawing, however, is created precisely to "convey information," hence

16  it is not a useful article.  Indeed, § 101 of the Act defines technical drawings as being a

17  "pictorial, graphic, and sculptural work," which are expressly protected by the Act in § 102.  In

18  making its erroneous point, Defendant relies on two inapposite cases.  First, Defendant cites Ets-

19  Hokin v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000), for the proposition that a work that is

20  purely utilitarian and function is not copyrightable.  Yet the court there considered a vodka bottle

21  itself, not a technical drawing of a bottle.  Second, Defendant cites Fabrica Inc. v. El Dorado

22  Corp., 697 F.2d 890 (9th Cir. 1983), for the proposition that utilitarian objections cannot be

23  copyrighted.  As was the case in Ets-Hokin, the court in Fabrica was faced with a dispute over an

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 10

1    actual object, not a drawing of one.   Defendant's argument is a red herring, and the Court

2    declines to follow it.

3                 b.    <u>Substantial Similarity</u>

4            To determine whether a work has been impermissibly copied, Plaintiff must show both

5    access to the copyrighted material and substantial similarity between the copyrighted work and

6    the alleged infringing work.  <u>Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.</u>, 122 F.3d

7    1211, 1217 (9th Cir. 1997).  Where a high degree of access is shown, the Ninth Circuit employs

8    the "inverse ratio rule" and "require[s] a lower standard of proof of substantial similarity."  <u>Rice</u>

9    <u>v. Fox Broadcasting, Inc.</u>, 330 F.3d 1170, 1178 (9th Cir. 2003).  Given Defendant's admission

10   that Plaintiff's works are widely known and accessible on the internet, access is very high.  Thus

11   Plaintiff's burden is somewhat lessened.

12           To determine whether two works are "substantially similar," the Court applies a two-part

13   analysis-an extrinsic test and an intrinsic test.  <u>Funky Films, Inc. v. Time Warner Entm't Co.</u>,

14   462 F.3d 1072, 1077 (9th Cir. 2006). "At summary judgment, courts only apply the extrinsic test;

15   the intrinsic test, which examines an ordinary person's subjective impressions of the similarities

16   between two works, is exclusively the province of the jury."  <u>Id.</u>  "The extrinsic test is an

17   objective measure of the articulable similarities between the expressive elements of the works."

18   <u>Bach</u>, 473 F. Supp. 2d at 1138.  The Court examines "the similarities between the copyrighted

19   and challenged works and then determine[s] whether similar elements are protectable or

20   unprotectable."  <u>Mattel, Inc. v. MGA Entm't, Inc.</u>, 616 F.3d 904, 913 (9th Cir. 2010).  Thus, if

21   the Court finds Plaintiff to have satisfied the extrinsic test, it must submit the matter to a jury to

22   decide the intrinsic test.

23

24
     ORDER ON PLAINTIFF'S AND DEFENDANT'S
     MOTIONS FOR SUMMARY JUDGMENT AND
     PLAINTIFF'S MOTION FOR LEAVE TO
     AMEND- 11

1    The main dispute between the parties is over the similarities in the vaults depicted in

2    Plaintiff's drawings and Defendant's drawings.  As an example, Plaintiff compares its drawing

3    of a vault called "814-LA" to Defendant's drawing of its vault, called the "8x14 Seattle

4    Electrical Vault."  Plaintiff's expert states that there are 45 similarities in the size, scale, and

5    dimensions of the vaults depicted, with 22 features being identical.  (Gallup Decl. ¶¶ 4-5.)  The

6    features of the vaults depicted show a great deal of similarity in the two objects.  This is true of

7    Plaintiff's 777-LA vault and Defendant's 8x14 Seattle Electrical Vault.  (Dkt. No. 54 at 16.)

8    Venn himself has noted 11 similarities in the size, location, and style of the features of these

9    vaults.  (Dkt. No. 42 at 12.)  Based on the information presented, the Court finds Plaintiff to have

10   shown adequate articulable similarities between the expressive elements of the drawings to

11   satisfy the extrinsic test.

12   Defendant argues incorrectly that "[t]he eleven categories of similarities alleged by

13   Oldcastle are all unprotectable similarities in <u>ideas</u>, not in expression."  (Dkt. No. 42 at 13

14   (emphasis in original).)  These similarities all relate to the drawing's expression of a particular

15   version of a precast utility vault.  Plaintiff is not claiming protection for abstract ideas related to a

16   vault.  Instead, Plaintiff is claiming that its drawing of particular vaults and Defendant's

17   drawings of similar vaults, share certain similarities in expression of utility vaults.  This satisfies

18   the extrinsic similarity test.

19   The Court therefore DENIES summary judgment.  It is for the fact finder to apply the

20   intrinsic test to determine whether there is substantial similarity in violation of the Copyright

21   Act.

22        c.        <u>Thin Coverage Argument</u>

23

24
ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 12

1    Defendant also argues that Plaintiff's copyright protections, if any, are "thin" and that

2  they can only apply whether there is a "virtual identity" between Plaintiff's and Defendant's

3  drawings.  (Dkt. No. 67 at 5.)  The Court disagrees.

4    The Ninth Circuit has stated that where "there's only a narrow range of expression (for

5  example), there are only so many ways to paint a red bouncy ball on blank canvas), the copyright

6  protection is 'thin' and a work must be 'virtually identical to infringe."  Mattell, 616 F.3d at 914.

7  The court has also found thin protection for a glass-in-glass jellyfish sculpture, due to the narrow

8  range of expression.  Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003).

9    Defendant presents only limited evidence that there is only a limited range of ways to

10  express the idea of a precast concrete vault.  The crux of the argument relies on the conclusion

11  that Plaintiff's drawings are the industry standard and that both Plaintiff's and Defendant's

12  customers base their request for specific vaults on Plaintiff's drawings.  Yet, Defendant's own

13  briefing only shows that consumers of the vaults use Plaintiff's drawings as a starting point (Dkt.

14  No. 42 at 4), not that they seek only vaults that are identical to the ones Plaintiff creates from its

15  drawings.  Plaintiff has also shown that many of its competitors make drawings of vaults of

16  similar size and dimension to Plaintiff's that possess sufficient visual differences to avoid any

17  infringement.  (Dkt. No. 54 at 18-20.)  More importantly, there is nothing inherent in the notion

18  of precast concrete vaults that limits their range of expression.  They are not akin to a glass-in-

19  glass jellyfish sculpture, which has a limited range of expression.  See Satava, 323 F.3d at 812.

20  The Court will not apply a narrowed copyright protection.

21        d.    Merger Doctrine

22

23

24  
ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 13

1   Defendant invokes the theory of merger to argue that Plaintiff's drawings of the vaults is

2   inextricable tethered to the idea of the vault, such that Copyright protection cannot extend to the

3   drawings.  Defendant is incorrect.

4   "When an idea and its expression are indistinguishable, or 'merged,' the expression will

5   only be protected against nearly identical copying."  <u>Apple</u>, 35 F.3d at 1444.  The Ninth Circuit

6   found merger applicable to an icon shaped like a piece of paper where "the idea of an icon in a

7   desktop metaphor representing a document stored in a computer program can only be expressed

8   in so many ways."  <u>Id.</u>  Put another way, "merger means there is practically only one way to

9   express an idea."  <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 799 F. Supp. 1006, 1021 (N.D. Cal.

10  1992).

11  Defendant argues that there is only one way to express the idea of a concrete vault

12  because customers who seek precast concrete vaults use Plaintiff's drawings as the industry

13  standard.  This does not satisfy the merger doctrine.  Defendant has not shown that there is only

14  one way to express the idea of a precast concrete vault.  Plaintiff, for example, has produced

15  three of its competitors' drawings which clearly show precast concrete vaults that are similarly

16  sized, yet have quite different appearances from Plaintiff's drawings.   (Dkt. No. 54 at 19-20.)

17  The Court will not apply the merger doctrine.

18              e.      <u>Scenes a Faire Doctrine</u>

19  Defendant incorrectly invokes the scenes a faire (standard feature) doctrine.

20  Scenes a faire holds that when similar features in the item claimed to be copyrighted are

21  "'as a practical matter indispensable, or at least standard, in the treatment of a given [idea],'"

22  they are treated like ideas and are therefore not protected by copyright."  <u>Apple</u>, 35 F.3d at 1144

23  (quoting <u>Frybarger v. Int'l Bus. Machs. Corp.</u>, 812 F.2d 525 (9th Cir. 1987)).   Under this

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 14

1  doctrine of, "'expressions indispensable and naturally associated with the treatment of a given

2  idea are treated like ideas and are therefore not protected by copyright.'"  Bach v. Forever Living

3  Prods. U.S., Inc., 473 F. Supp. 2d 1127, 1136 (W.D. Wash. 2007) (quoting Rice, 330 F.3d at

4  1175 (internal quotation marks omitted)).  For example, in the context of a computer desktop

5  using multiple "windows," there are only two ways of displaying them: overlapping or tiled.

6  One cannot copyright the idea of an overlapping window because of the scenes a faire doctrine.

7  However, the doctrine does not apply to the particular expression of how to present overlapping

8  windows.  Apple, 35 F.3d at 1144.

9        The scenes a faire doctrine does not apply in this case.  Plaintiff is not claiming copyright

10  protection for drawings that are the only drawings one can make of utility vaults.  It is only

11  claiming copyright for certain specific expression of various vault formations.  As Plaintiff has

12  shown, there are many expressions that one can make of a utility vault, even ones that meet

13  certain overall dimensions requested by a third-party.  (Dkt. No. 54 at 18-20.)  That is, one can

14  draw a fifteen foot by seven foot utility vault with three levels and certain interior features

15  without having the drawing be identical to the Plaintiff's drawing.  (See id. at 19.)  Defendant

16  claims that customers demand that bids include drawings "equal to" Plaintiff's drawings.  (See

17  Dkt. No. 42 at 4 (citing Jacobs Dep. at 34-38).)  This does not show that all drawings of vaults

18  must be essentially identical to Plaintiff's.  Rather, as Plaintiff has shown, one can draw a vault

19  that has meets the equivalent specifications of one of Plaintiff's drawings without the depicted

20  objects being substantially similar.  The Court does not find the scenes a faire doctrine applicable

21  to this claim.

22        5.    Lanham Act Claim

23

24

1       Defendant correctly argues that Plaintiff's trade dress Lanham Act claim must be

2   dismissed for lack of evidence.  Plaintiff fails to satisfy its burden to show actual confusion.

3       "Trade dress refers generally to the total image, design, and appearance of a product and

4   may include features such as size, shape, color, color combinations, texture or graphics." Clicks

5   Billiards, Inc. v. Sixshooters Inc., 251 F.3d 1252, 1258 (9th Cir. 2001) (quotation omitted).   In

6   order to prevail on a § 43(a) trade dress claim under the Lanham Act, Plaintiff must provide "(1)

7   that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role

8   either because it is inherently distinctive or has acquired secondary meaning; and (3) that the

9   defendant's product or service creates a likelihood of consumer confusion."  Clicks Billiards,

10  Inc. v. Sixshooters Inc., 251 F.3d 1252, 1258 (9th Cir. 2001); see TrafFix Devices, Inc. v.

11  Marketing Displays, Inc., 532 U.S. 23, 29 (2001).

12      Plaintiff makes no argument as to the first and second elements of its trade dress claim.

13  This alone is sufficient grounds to dismiss the claim.  However, the Court considers the third

14  element and Plaintiff's failure to provide any competent evidence on point.  Plaintiff submits a

15  self-serving declaration from Kai Johnson, an employee, who claims that one customer

16  expressed to him that he was confused as to whether Defendant sold Plaintiff's products.

17  (Johnson Decl. ¶¶ 5-6.)  Mr. Johnson states in those paragraphs that he spoke to Jeff Haskins at

18  Premium Construction Group, who told Mr. Johnson that he thought Defendant was selling

19  Plaintiff's products.  (Johnson Decl. ¶ 3-4.)  Mr. Johnson also states that Mr. Haskins told him he

20  thought Defendant was an authorized reseller of Plaintiff's products.  (Id. ¶ 5.)  Defendant

21  moves to strike these comments.  The Court agrees with Defendant and STRIKES the statements

22  to the extent they are submitted to show Mr. Haskin's confusion.  Mr. Johnson also declares that

23  "[d]uring the course of my employment at Oldcastle, I have received other inquiries regarding

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 16

1  the similarities between the drawings for Oldcastle's products and the drawings for Granite's

2  products." (Id. ¶ 6.)  The Court does not strike this statement.  However, it does not show a

3  genuine issue as to confusion.  The statement does not show that customers are confused—only

4  that there may be similarities between the products.  This statement is simply too vague to

5  sustain Plaintiff's burden or raise a genuine issue of fact.  The Court GRANTS Defendant's

6  motion on this issue and DISMISSES the claim.

7        6.    Motion to Strike

8        Defendant moves to strike James Schack's declaration for lack of personal knowledge,

9  hearsay, and failure to disclose as a witness.  The Court DENIES the motion on this issue.

10  Defendant has failed to specify which portions should be stricken and the grounds to do so.

11  Without some specificity, the motion is inadequate to obtain the relief it seeks.  See Green v.

12  Seattle Art Museum, No. C07-58 MJP, 2008 WL 2180144, at *2 (W.D. Wash. May 22, 2008).

13       Defendant also moves to dismiss the declaration of Jeff Gallup for failure to disclose him

14  as a witness.  Defendant offers not legal citation or reason why Gallup had to be disclosed as a

15  witness.  It would appear the use of his declaration satisfies the disclosure rules of Fed. R. Civ. P.

16  26(a)(1), and 26(a)(3). The Court DENIES the motion on this issue.

17       Defendant lastly asks the Court to strike citations to unpublished decisions published

18  prior to January 1, 2007.  This is merely a request to enforce Fed. R. App. P. 32.1.  In deciding

19  the motions, the Court has of course heeded this rule, as with all other Federal Rules.

20  B.    Plaintiff's Summary Judgment Motion

21        1.    Copyright Misuse is a Cause of Action

22       Plaintiff first argues that copyright misuse is a defense, not a cause of action.  The Court

23  disagrees.

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 17

1    The Ninth Circuit has recognized copyright misuse as a basis for a declaratory action.

2    Practice Mgmt. Info. Corp. v. Am. Med. Ass'n, 121 F.3d 516, 520-21 (9th Cir. 1997).  Success

3    on such a claim "does not invalidate a copyright, but precludes its enforcement during the period

4    of misuse."  Id. at 520 n.9.  The party pursuing a copyright misuse claim must prove that the

5    holder of the copyright is using its monopoly secured by the copyright to extend to areas not

6    covered by the copyright itself.  Id. at 520.  The Fourth Circuit has announced a similar rule,

7    finding copyright misuse to be a valid defense, not a counterclaim.  Lasercomb Am., Inc. v.

8    Reynolds, 911 F.2d 970, 973 (4th Cir. 1990).  The Fourth Circuit invoked principles of antitrust,

9    in suggesting that when a copyright is being asserted to secure rights not granted by the

10   Copyright Act's limited monopoly, it is "contrary to public policy to grant."  Id. at 977.  The

11   Ninth Circuit has not expressly adopted this formulation of copyright misuse, but it has cited

12   Lasercomb favorably.  See Practice Mgmt., 121 F.3d at 521.

13       In Practice Mgmt., the court found copyright misuse where the American Medical

14   Association ("AMA") entered into a licensing agreement with the Health Care Financial

15   Administration ("HFCA") that required the HFCA to use only the AMA's product (a coding

16   system) and not to use any products from competitors of the AMA.  Id. at 521.  The court found

17   this restrictive licensing agreement to be an abuse of copyright because it improperly gave the

18   AMA exclusive rights beyond its rights secured by the copyright act.  It violated the "'public

19   policy embedded in the grant of a copyright.'"  Id. (quoting Lasercomb, 911 F.2d at 977).

20       District courts have found it difficult to apply the Practice Mgmt. test, because it

21   "inevitably requires courts to rely on antitrust principles or language to some degree."  In re

22   Napster, Inc. Copyright Litig., 191 F. Supp. 2d 1087, 1103 (N.D. Cal. 2002).  As of at least 2002,

23   "the doctrine of copyright misuse remains largely undeveloped [in the Ninth Circuit], with little

24   ORDER ON PLAINTIFF'S AND DEFENDANT'S
     MOTIONS FOR SUMMARY JUDGMENT AND
     PLAINTIFF'S MOTION FOR LEAVE TO
     AMEND- 18

1   case law to aid this court in its inquiry." <u>Id.</u>  The Ninth Circuit did not provide express factors,

2   nor did it require any antitrust analysis.  Rather, it held that the use of a copyright to gain a

3   competitive advance violates the public policy embedded in the grant of a copyright.  However,

4   as the court in <u>Napster</u> recognized, the rule seems to be that "copyright misuse exists when

5   plaintiffs . . . enter unduly restrictive licensing agreements."  191 F. Supp. 2d at 1105.  Whether

6   other conduct violates public policy is less clear.  At the very least, there must be facts tending to

7   show efforts to expand and extend rights secured by the Copyright Act beyond their proper

8   scope.

9          Defendant is permitted to allege a counterclaim of copyright misuse in order to obtain a

10  declaratory judgment that the copyright at issue cannot be enforced against them.

11         2.      <u>Statute of Limitations</u>

12         Plaintiff suggests that Defendant's counterclaim is time-barred.  The argument is

13  unavailing for two reasons.  First, Plaintiff failed to allege this as an affirmative defense to the

14  counterclaim, although it was required to.  Fed. R. Civ. P. 8(c)(1).  Failure to raise the issue as an

15  affirmative defense constitutes waiver.  <u>Morrison v.</u> Mahoney, 399 F.3d 1042, 1046 (9th Cir.

16  2005).  Second, Defendant's counterclaim is based on the actions Plaintiff undertook in 2010 by

17  choosing to file this specific law suit.  It does not arise out of conduct that occurred in 2006.  The

18  counterclaim is not time-barred.

19         3.      <u>Facts Do Not Support the Claim</u>

20         Defendant fails to articulate the public policy basis for invalidating Plaintiff's assertion of

21  copyright protection.

22         The only evidence Defendant puts forward as to copyright misuse is Plaintiff's "pursuit

23  of the present action, because its complaint seeks copyright protection for non-copyrightable

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 19

1    functional features of the underlying products depicted in its catalogs." (Dkt. No. 62 at 13.)

2    This is an incorrect recitation of Plaintiff's claim.  Plaintiff is not trying to assert copyright

3    protection for the underlying products, nor is it trying to assert rights through a restrictive

4    licensing agreement.  Rather, Plaintiff seeks copyright protection for technical drawings that are

5    copyrightable as expressions, or unique iterations, of precast concrete vaults.  There is nothing

6    wrong with the proposed copyright claims, as explained above.  Defendant offers no other facts

7    or theory to support its claim.  Thus, the Court GRANTS Plaintiff's motion and DISMISSES the

8    counterclaim.

9    C.        Plaintiff's Motion to Amend

10            Although filed at a very late date in the proceedings, Plaintiff's motion to amend

11   convinces the Court that leave to amend should be permitted.

12            Plaintiff must show good cause to alter the scheduling order in order to be permitted to

13   file its amended complaint.  Fed. R. Civ. P. 16(b)(4).  There are four factors to consider: (1)

14   undue delay, (2) bad faith, (3) futility in amendment, and (4) prejudice to the non-moving party.

15   Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010).  The Ninth Circuit has affirmed denial of a

16   request for leave to amend that was made two weeks before discovery ended, where the proposed

17   amended "would not benefit this Plaintiff" because the claim was futile, and where amendment

18   would have caused undue delay and prejudice to the non-moving party.  Solomon v. N. Am. Life

19   and Cas. Ins. Co., 151 F.3d 1132, 1138 (9th Cir. 1998).   Upon finding good cause, amendment

20   should be freely given.  Fed. R. Civ. P. 15(a)(2).

21            There is no evidence of bad faith or futility.  It does not appear that Plaintiff is

22   sandbagging or trying to gain some tactical advantage in proposing an amendment.  Moreover,

23   the proposed amendment does not appear to be futile.  The Court has already determined that

24

ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 20

1   Plaintiff's Copyright Claim, as presently framed, does not suffer from any legal defects.  In its

2   opposition, Defendant has failed to show why the proposed amendment would alter this

3   outcome.  The amendment appears targeted only at the clarification of what copyrights apply and

4   how Defendant obtained the drawings.  The facts are thus not comparable to those in <u>Solomon</u>,

5   given the absence of any showing of futility.

6           The tardy nature of the proposed amendment is the greatest reason to deny the motion.

7   Plaintiff knew that it needed to amend its complaint as of at least the middle of October, after it

8   located the 1970 drawings.  (Venn Decl. ¶ 3.)  Yet, it waited to amend the complaint until after it

9   received confirmation of the new registration from the U.S. Copyright Office.  Plaintiff could

10  have amended in October to assert the newly discovered fact that Defendant obtained the

11  drawings at issue from Seattle City Light, not Plaintiff's website.  However, Plaintiff could not

12  have asserted its new and supplemented registrations until December 9, 2010, when it obtained

13  the registrations.  Thus an amendment in October would have required a further amendment,

14  once and if the new registration numbers were acquired.  The Court does not find this to be

15  undue delay.

16          The Court thus finds good cause to permit the amendment and leave is hereby given.

17  Plaintiff shall have 5 days from entry of this order to file its second amended complaint.  The

18  Court ORDERS the parties to meet and confer as to what deadlines need to be extended in light

19  of this amendment.  The parties should address whether they desire a new trial date or any

20  extension of the discovery and dispositive motions deadlines.  The parties are ORDERED to

21  submit a status report within 10 days of this order.

22  \\

23  \\

24
ORDER ON PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND- 21

1

### Conclusion

2          The Court finds only a small portion of Plaintiff's Copyright Act claim to be time-barred.

3   The remainder of the claim should be presented to and decided by the fact finder.  The Court

4   GRANTS in part and DENIES in part Defendant's motion on this claim.  Plaintiff has failed to

5   produce sufficient evidence to sustain its trade dress claim.  The Court GRANTS Defendant's

6   motion and DISMISSES this claim.  The Court also GRANTS Defendant's motion as to

7   Plaintiff's breach of covenant claim, which is barred by the statute of frauds and DISMISSED.

8   The Court GRANTS in part and DENIES in part Defendant's motion to strike.

9          The Court GRANTS Plaintiff's motion for summary judgment as to Defendant's

10  counterclaim.  Defendant has failed to produce sufficient evidence to sustain its counterclaim.

11  However, Defendant is not barred from reasserting such a counterclaim in response to Plaintiff's

12  second amended complaint.

13         The Court GRANTS Plaintiff's motion to amend its complaint.  Plaintiff must file the

14  amended complaint within 5 days of this order.  The parties are ORDERED to meet and confer

15  and present a joint status report within 10 days of this order.

16         The clerk is ordered to provide copies of this order to all counsel.

17         Dated this 2nd day of March, 2011.

18

19

20  _____
    Marsha J. Pechman
21  United States District Judge

22

23

24  ORDER ON PLAINTIFF'S AND DEFENDANT'S
    MOTIONS FOR SUMMARY JUDGMENT AND
    PLAINTIFF'S MOTION FOR LEAVE TO
    AMEND- 22